DREW, J.
Lin 2001, the accounting firm of Cole, Evans, and Peterson (“CEP”) filed seven suits on open accounts against two limited liability companies, two individuals, five corporations, and over 100 real estate partnerships. The defendants, which number approximately 125, owned low-income and subsidized housing units in Louisiana and Texas. It was alleged in the seven lawsuits that the defendants had failed to pay for professional services that had been provided to them by CEP. The seven lawsuits were ultimately consolidated.
In 2003, the trial court granted CEP’s motion for summary judgment against all defendants. CEP then set about to recover the amounts owed to it under this judgment. CEP filed petitions for garnishment under writ of fieri, facias against financial institutions believed to hold as *843 sets belonging to defendants. Garnishment interrogatories were also propounded to these institutions. CEP was able to seize assets to satisfy a portion of the judgment.
Meanwhile, in October of 2003, attorney Ronald Corkern filed his first pleading in the case, a motion to recall and vacate the writ of fieri facias, which the trial court ultimately denied. David Rothell, who had represented defendants in this litigation since the original petitions had been filed, was permitted by the court to withdraw as counsel of record in November of 2003.
In November of 2004, through service by mail on Corkern, CEP submitted post-judgment interrogatories and requests for production of documents to 74 defendants, most of which were partnerships. The | ^partnerships moved to quash this discovery request on the grounds that service on counsel of record was insufficient; they asserted that it was required to be made on a general partner of each partnership or a partnership employee of suitable age and discretion. While the motion was pending, Corkern filed a motion to withdraw as counsel of record in which he asserted that defendants had informed him that his services were no longer needed and that he was no longer authorized to appear on their behalf. On January 14, 2005, the trial court denied the motion to quash, but granted Corkern’s motion to withdraw.
CEP filed a motion for new trial on the granting of the motion to withdraw. CEP accused defendants of removing their counsel of record in order to make the collection of the judgment more difficult. The trial court granted CEP’s motion for new trial on February 28, 2005. Corkern reurged his motion, but the trial court denied his amended motion to withdraw on April 5, 2005, having concluded that “the interests of the administration of justice are better served” by Corkern continuing his representation.
On June 16, 2005, CEP filed a motion to compel responses to its post-judgment interrogatories and requests for productions of documents. The trial court granted the motion to compel on July 19, 2005. Certain partnerships (“Applicants”) then applied for a supervisory writ with this court to seek review of this ruling. This court granted the writ, and we now affirm the trial court.
I,¿DISCUSSION
In their brief submitted to this court after the grant of the supervisory writ, Applicants contend that: (1) granting the motion to compel was improper because service of the interrogatories and requests for production upon their counsel was not done in accordance with law, and (2) the trial court erred in not permitting Corkern to withdraw as counsel of record.

Motion to Compel

Applicants argue that service was required to be made on the individual partnerships as set forth in La. C.C.P. art. 1263. They assert that service by mail to counsel of record was insufficient. We disagree, as the method of service employed by plaintiffs is permitted under La. C.C.P. art. 2451.
The intent of art. 2451, which regulates the examination of judgment debtors, is “to assist creditors in executing their judgments by providing them a means to discover assets or property belonging to the debtor which may be subject to seizure.” Parish Nat. Bank v. Lane, 397 So.2d 1282, 1284 (La.1981). Article 2451 provides, with emphasis added:
A. In aid of execution the judgment creditor may examine the judgment debtor, his books, papers, or documents, upon any matter relating to his proper *844 ty, either as provided in Articles 1421 through 1515 or as provided in Articles 2452 through 2456.
B. In aid of execution of the judgment, the judgment creditor may also examine any person upon any matter relating to the judgment debtor’s property, as provided in Articles 1421 through 1474.
|4Paragraph A gives the judgment creditor the option of utilizing the articles pertaining to traditional methods of discovery (arts. 1421 through 1515) or conducting an in-court examination (arts. 2452 through 2456).
Written interrogatories and production of documents are specifically set forth as discovery methods in La. C.C.P. art. 1421. La. C.C.P. art. 1474 states, in relevant part, with our emphasis:
A. Except as otherwise provided by Article 1430, all of the objections, notices, requests, affidavits, interrogatories, and answers to interrogatories, required by any Article in this Chapter to be in writing and served on an adverse party, may be served as provided in Article 1313.
B. Interrogatories and the answers thereto, requests for production or inspection, and requests for admissions and the responses thereto authorized by Article 1421 shall be served upon other counsel or parties, but shall not be filed in the record of the proceedings, unless filing is required under the provisions of Paragraph C of this Article or unless ordered to be filed by the court....
La. C.C.P. art. 1313 provides, in part:
A. Except as otherwise provided by law, every pleading subsequent to the original petition, and every pleading which under an express provision of law may be served as provided in this Article, may be served either by the sheriff or by:
(1) Mailing a copy thereof to the counsel of record, or if there is no counsel of record, to the adverse party at his last known address, this service being complete upon mailing.
(2) Delivering a copy thereof to the counsel of record, or if there is no counsel of record, to the adverse party.
In support of their argument, applicants rely on Strange v. Imperial Pools, Inc., 506 So.2d 1205 (La.1987). There, the court addressed whether the attorney of record for two corporate defendants was properly served with a motion and order for the corporate defendants to appear in court for a | ¿judgment debtor examination. Strange can be readily distinguished as it dealt with the examination of a judgment debtor under La. C.C.P. art. 2452. As noted earlier, art. 2451(A) gives the judgment creditor the option of proceeding as provided in arts. 1421 through 1515, or as provided in arts. 2452 through 2456. CEP elected to use the former rather than the latter option. Therefore, service was proper on the applicants’ counsel of record. We find no error in the trial court granting the motion to compel.

Motion to Withdraw

We note that in their application for the supervisory writ, the applicants’ only assigned error was that the trial court erred in granting the motion to compel. Although, as part of their argument, applicants’ counsel noted that the trial court’s judgment had placed him in an ethical dilemma, applicants did not seek relief from the earlier ruling that denied the motion to withdraw. Accordingly, this court will not address that ruling.[1]
*845 CONCLUSION
At applicants’ costs, we AFFIRM the ruling granting the motion to compel.

. However, we note that CEP’s primary objection to Corkern’s withdrawal rings hollow. CEP asserts that if Corkern is allowed to withdraw, it will become too burdensome *845 with future discovery requests to track down the agents for service of process for more than 100 defendants. Yet, this challenge did not prove too insurmountable to CEP when it filed its original petitions. By our count, service of the original petition was requested to be made on approximately 86% of the defendants through Maurice Riemer Calhoun, Jr., individually, as a partner, or as a registered agent for service or process. The remaining defendants were served through three other individuals (Thomas Calhoun, Thomas Frye, and Bill Lowery), either in their individual capacity or as a registered agent for service of process.